IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRADLEY ELLERMAN,

                      Plaintiff,
v.                                                              OPINION and ORDER

THOMAS J. VILSACK, Secretary of the U.S.           23-cv-119-jdp
Department of Agriculture,

                      Defendant.

---

Plaintiff Bradley Ellerman, proceeding without counsel, is suing the Department of Agriculture for disability discrimination. In August 2019, the department offered Ellerman a job as a human resources specialist in Kansas City, Missouri. After accepting the offer, Ellerman asked if he could work from Wisconsin, where he lived. He told the department that he needed an accommodation for a traumatic brain injury and injuries to his eye and hip that he sustained when he was hit by a motorcycle in 2012. The department told Ellerman that relocation was necessary because his job involved collaborating with other employees, but they could allow him to work remotely four days a week. The department also offered accommodations related to transportation and Ellerman's work environment. Ellerman rejected the accommodations and filed this lawsuit under the Rehabilitation Act.

The department moves for summary judgment. Dkt. 9. The court will grant the motion because Ellerman has not cited evidence that he suffered from a disability that prevented him from relocating.

ANALYSIS

Ellerman asserts a single claim: the department violated the Rehabilitation Act by refusing his request to work from Wisconsin. Among other things, this claim requires Ellerman to prove that he needed an accommodation for a disability, but the department failed to provide a reasonable accommodation. *See Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021); *Brumfield v. City of Chicago*, 735 F.3d 619, 631-32 (7th Cir. 2013).[1] For the purpose of its summary judgment motion, the department does not dispute that Ellerman can meet other elements of his claim, including that his traumatic brain injury and injuries to his hip and eye are disabilities and that he was qualified for the job.

The department contends that Ellerman's requested accommodation was not reasonable for two reasons: (1) he did not show that he needed the accommodation for his disability; and (2) working on site at least part of the time was an essential function of the job. On a motion for summary judgment, the question is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The court concludes that Ellerman has not adduced evidence that his disability required the accommodation he requested or that the accommodations offered by the department were unreasonable, so the court will grant the

---

[1] Some of the cases cited in this opinion were decided under the Americans with Disabilities Act rather than the Rehabilitation Act because the standard for an accommodation claim under both statutes is largely the same. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671–72 (7th Cir. 2012).

department's motion for summary judgment. This makes it unnecessary to consider whether working on the job site was an essential function of the job.

The court's first task is to identify precisely what Ellerman's requested accommodation was. Ellerman's request was not to work from home specifically; he did not object to working in an office near his home. In email correspondence between Ellerman and the department, Ellerman offered multiple times to work from home *or* at a department office near Mauston, Wisconsin, where he lived.[2] Ellerman also did not object to travel. He offered to travel to Kansas City for training and occasionally after that.[3] Ellerman's specific objection was that he did not want to relocate, a point he made numerous times in his communications with the department. Dkt. 12-4, at 3; Dkt. 12-6, at 4; Dkt. 12-9, at 9; Dkt. 15-2, at 8. In his administrative grievance, Ellerman stated that he wanted an accommodation that "allowed [him] to maintain [his] current residence." Dkt. 15-1, at 4.

---

[2] *See* Dkt. 12-4, at 4 (asking whether "there is any chance of Telework, or working from the USDA office in my area"); Dkt. 12-6, at 4 ("I sincerely believe that I could perform the essential functions of this job either remotely from my home, or by having work space in the Mauston USDA office building or some combination of the two."); *id.* at 7 (asking about "offering me the ability to work 'Virtually' or from the Mauston, WI office"); Dkt. 12-9, at 8 ("My prior accommodation request offered an option of working from the Mauston, WI USDA office, or Telework from my current residence."). *See also* Dkt. 15-2, at 12 (stating during administrative proceedings that "[i]t is very possible I wouldn't need ANY telework, if the duty location could be changed to Mauston"); *id.* at 14 (stating during administrative proceedings that an "effective" accommodation would be to "work from the Mauston, WI office").

[3] *See* Dkt. 12-6, at 4 ("I am willing and able to travel [to Kansas City] on a temporary basis for initial training, and as necessary to remain current and effective in my job. . . . I do realize that this would still require some up-front time in the Kansas City office, as well as other infrequent times beyond the initial training and orientation."); Dkt. 12-4, at 3 (acknowledging that there would be "some amount of training time in Kansas City"); Dkt. 15-1, at 1 (proposing "less frequent visits to the Kansas City area"); Dkt. 17-2, at 9 (asking whether he could "make a small number of trips [to Kansas City] each year to accomplish tasks that can't be done from Mauston").

Some of the reasons Ellerman gave the department for not wanting to relocate were not about his disability. Many of his objections were about not wanting to relocate his family. Dkt. 12-4, at 3; Dkt. 12-6, at 4; Dkt. 12-9, at 9. He also said that he did not want to relocate because he was prosecuting numerous employment grievances against the Army. Dkt. 15-3, at 2.[4] The Rehabilitation Act requires accommodations only for disabilities, not for hardships caused by different issues. *Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020); *Brumfield*, 735 F.3d at 632–34. So any objections to moving based on his family or his other activities in Wisconsin are irrelevant to his claim under the Rehabilitation Act.

The closest Ellerman came to connecting his accommodation request to his disabilities is an email in which he discussed the difficulty of adapting to a new environment:

> I could attempt to get [a] physician certification to document the reasoning that I am asking to remain living in my current residence. I'm not a doctor, but I know that the psychological impact of relocating is what I am trying to remove. i.e.— having to re-acculturate myself and my family to a new area. Finding new doctors, finding new resources (disability and otherwise), learning the new people, places, processes necessary to complete daily activities, etc. Where I currently live, I am familiar with all of those things, and have built or learned the things necessary for me to function not only in work, but also in the lives of my family.

Dkt. 12-6, at 4. In a "formal request for reasonable accommodation," Ellerman made a similar statement expressing concerns about "re-integrat[ing] into a new living environment." Dkt. 12-9, at 9.

Ellerman didn't clearly explain what his concern is. If his objection is that moving to a new city is stressful and hard, and he would prefer not to disrupt his life and the life of his

---

[4] The parties do not provide context for this, but I am aware from a past lawsuit Ellerman filed that he was accusing the Army of terminating him because of his disabilities. *See Ellerman v. Wormouth*, No. 21-cv-324 (W.D. Wis.).

4

family, that is an understandable concern, but it is not protected by the Rehabilitation Act because it is not the result of a disability. If he believes that his traumatic brain injury makes it too difficult for him to relocate or that there are disability resources in Mauston that he would not be able to find in Kansas City, those objections are not supported.

Ellerman submitted letters from his medical providers, but none of them said that any of his disabilities prevent him from relocating. Two of the letters simply state that Ellerman has a cognitive disability, without describing a specific impairment or a need for an accommodation. Dkt, 12-11, at 2, 5. A letter from Dr. Nathan Mathews states that Ellerman "would benefit from large font for near work" because of his eye injury. *Id.* at 3. Ellerman does not say now that he needed accommodations for his eyes, but the department offered him "Visual Assistive Technology as needed to assist in managing the Visual Impairments." Dkt. 12-7, at 2. Ellerman does not say that accommodation was inadequate.

Ellerman relies on a letter from Dr. Kevin A. Butterfield, stating that Ellerman develops hip pain when he is immobile "for extended periods of time." Dkt. 12-11, at 4. Butterfield also said that Ellerman "finds his commute intolerable. He is requesting that he be allowed to work at home. This is reasonable given his current circumstances." *Id.* As the department points out, the letter is dated two years before the department offered Ellerman a job, so its probative value is diminished. But regardless of timeliness, the letter is not helpful for two reasons. First, it is not about Ellerman's ability to relocate, it is about Ellerman's ability to commute to an office, something that Ellerman did not object to doing. Second, the department offered Ellerman accommodations for his hip injury. In addition to allowing Ellerman to work remotely four days a week, the department offered Ellerman a sit/stand desk and a transit subsidy so

5

that he would have more freedom of movement during his commute. Dkt. 12-7, at 2. Ellerman does not explain why that accommodation is insufficient to address any problems with his hip.

Ellerman was required to come forward with some evidence showing that he needed the accommodation for his disability rather than for some other reason. *Youngman*, 947 F.3d at 1042–43; *Wells v. Winnebago Cty., Ill.*, 820 F.3d 864, 867 (7th Cir. 2016); *Ekstrand v. School Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009). Ellerman's own say-so is not enough. *See Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 522–23 (7th Cir. 2009). None of the evidence Ellerman cites supports a finding that a disability prevents him from relocating, so the department is entitled to summary judgment.

In his brief and proposed findings of fact, Ellerman raises two issues: (1) the department has not provided any evidence why it needed him to work on the jobsite one day a week; and (2) the department did not respond to Ellerman's questions about what sort of medical documentation it needed to support his accommodation request. The first issue is related to the department's contention that it was not required to allow Ellerman to work from Wisconsin because working on the jobsite at least some of the time was an essential job function. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285-86 (7th Cir. 2015). I am granting the department's motion on other grounds, so it isn't necessary to consider that issue.

As for the department's failure to identify the medical records it wished to see, I understand Ellerman to contend that the department did not engage in an "interactive process." That is the term used in the regulations and case law for the employer's obligation to help the employee identify a reasonable accommodation. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682–83 (7th Cir. 2014).

The department did engage in an interactive process with Ellerman. The parties went back and forth for months about Ellerman's needs and the ways that the department could accommodate Ellerman, resulting in a proposed accommodation that would have allowed him to work remotely four days week, a significant departure from the department's general policy of allowing employees to work remotely no more than one day a week. Dkt. 19, ¶ 15. Ellerman is correct that the department did not identify specific medical records that he needed to provide. But it was clear enough from the nature of his accommodation request that he needed medical evidence showing that he was unable to relocate. Even if the court were to assume that the department should have been more specific, that would not help Ellerman because a failure to engage in the interactive process is not a separate claim; Ellerman must still show that the department failed to provide him with a reasonable accommodation for his disability. *Bunn*, 753 F.3d at 682–83; *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008). Even now, Ellerman cites no additional medical evidence or testimony showing why a disability prevents him from relocating or that the accommodations the department provided were unreasonable. So the court will grant the department's motion for summary judgment.

ORDER

IT IS ORDERED that Thomas J. Vilsack's motion for summary judgment, Dkt. 9, is GRANTED and this case is DISMISSED with prejudice. The clerk of court is directed to enter judgment and close the case.

Entered August 30, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge